UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS A. RIOS,<br><br>                Petitioner,<br><br>      v.<br><br>COVELLO,<br><br>               Respondent. | Case No. 2:20-11678-CJC (MAR)<br><br>AMENDED FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Final[1] Report and Recommendation is submitted to the Honorable Cormac J. Carney, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## **SUMMARY OF RECOMMENDATION**

On December 17, 2020, Petitioner Luis A. Rios ("Petitioner"), an inmate at Richard J. Donovan Correctional Facility, constructively filed[2] a pro se Petition for a

---

[1] The Court issues this Final Report and Recommendation to address Respondent's Objections. See Dkt. 34; below, at subsection V. Petitioner's Objections did not result in any substantive changes.

[2] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the Court deems the pleading constructively filed on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted).

Writ of Habeas Corpus ("Petition") by a person in state custody pursuant to 28 U.S.C. § 2254 ("section 2254") challenging his conviction(s) in the Los Angeles County Superior Court. ECF Docket Nos. ("Dkt(s).") 1 at 1; 3; 8; 12; 19; 21.[3] On July 6, 2021 Respondent filed an Answer to the Petition. Dkt. 23. On September 2, 2021, Petitioner constructively filed his Response to the Answer. Dkt. 27. On October 6, 2021, the Court ordered supplemental briefing on the issue of timeliness. Dkt. 28. On October 28, 2021, Petitioner filed his Supplemental Brief, and on November 12, 2021 Respondent filed a Reply Brief. Dkts. 29, 30. Thus, the matter stands submitted.

For the reasons discussed below, the Court recommends **DENYING** the Petition and **DISMISSING** the action with prejudice.

## II.

## PROCEDURAL HISTORY

**A.  STATE COURT PROCEEDINGS**

On April 26, 2013, Petitioner pled guilty in San Bernardino County Superior Court, Case No. FWV1201258, to attempted murder with personal use of a firearm (California Penal Code §§ 664/187(a)(1); 12022.5(A)). Dkt. 1 at 32, 38; Lodg. 4 at 2.[4]

---

[3] All citations to electronically filed documents refer to the CM/ECF pagination.

[4] The Court's citations to Lodged Documents refer to documents lodged in support of Respondent's July 6, 2021 Answer. See Dkts. 23, 24. Respondent identifies the documents as follows:

(1) Petition for Writ of Habeas Corpus, S262091 ("Lodg. 1");
(2) Petition for Writ of Habeas Corpus, WHCJS2000386 ("Lodg. 2");
(3) Docket (Register of Actions) reflecting Order denying habeas corpus, S262091 ("Lodg. 3");
(4) Order denying habeas corpus, WHCJS2000386 ("Lodg. 4"); and
(5) Excerpts, 57 continuous pages, from Electronic Records Management System document, California Department of Corrections and Rehabilitation as of March 15, 2021, regarding Rios, AP6351, but omitting rap-sheet information received at pages 58–85 ("Lodg. 5").

Dkts. 23, 24.

On May 24, 2013, Petitioner was sentenced to twelve (12) years in state prison.  Dkt. 1 at 38; Lodg. 5 at 11.

On March 14, 2014, Petitioner pled no contest in Los Angeles County Superior Court, Case No. KA098999-01, to attempted murder (California Penal Code §§ 664/187(a)) and forcible sexual penetration of a minor with a foreign object (California Penal Code § 289(h)).  Lodg. 5 at 6–10, 14, 19–22.  Petitioner was sentenced to a twenty-seven-year term that would run consecutively with the San Bernardino County term.  Id. at 8–10, 14.  Rios did not appeal the conviction in the California Court of Appeal.  Dkt 1 at 4.

On March 17, 2020, Rios constructively filed a "Motion to Reconsider Petitioner[']s for Joinder of Two Cases Related but Filed in Separate Jurisdictions within the State of California" in the San Bernardino County Superior Court, Case No. WHCJS2000386.  Lodg. 2 at 5.  On July 27, 2020, the superior court concluded the motion should be treated as a petition for writ of habeas corpus and denied the petition, concluding it failed to state a prime facie claim for habeas relief, raised issues that could have been presented at trial, and was untimely.  Lodg. 4 at 2–4.

On April 30, 2020, Petitioner constructively filed a Petition for writ of habeas corpus in the California Supreme Court ("State Petition").  Lodg. 3 at 2.  The State Petition argued that:  (1) "Petitioner[']s due process rights were violated by the prosecutor when they used a .380 weapon in a case where 9. mm casing were located[,] using this information to [coerce] a plea agreement which resulted in an illegal sentence;" (2) "Petitioner[']s due process rights were violated when the prosecutor [coerced] a plea agreement regarding [Cal. Penal Code § 289] where all parties were consenting participants in acts outlined by Romeo and Juliet laws of this country;" and (3) "Petitioner[']s due process rights outlined by the Fourteenth Amendment were violated when trial counsel failed to file suppression motions regarding the enhancements for the use of a weapon as outlined above."  Lodg. 1 at

3

26–34. The California Supreme Court denied the State Petition on July 15, 2020, with the following citation:

> See In re Robbins (1998) 18 Cal.4th 770, 780 [courts will not entertain habeas corpus claims that are untimely]; People v. Duvall (1995) 9 Cal.4th 464, 474 [a petition for writ of habeas corpus must include copies of reasonably available documentary evidence]; In re Swain (1949) 34 Cal.2d 300, 304 [a petition for writ of habeas corpus must allege sufficient facts with particularity].

Lodg. 3 at 2.

**B.    FEDERAL HABEAS PROCEEDINGS**

On December 17, 2020, Rios constructively filed the instant Petition.  Dkt. 1 at 15.  On January 6, 2021, the Court ordered Petitioner to show cause why the Petition should not be dismissed as untimely and clarify which conviction the Petition is attacking.  Dkt. 3.  On January 16, 2021, Petitioner responded to the Court's order, clarifying that the Petition attacks his Los Angeles County conviction and contending Petitioner is entitled to a later trigger date and/or equitable tolling.  Dkt. 8 at 2–3.

On March 10, 2021, Respondent filed a Motion to Dismiss the Petition on the grounds that:  (1) Petitioner seeks relief from two (2) judgements under a single petition; and (2) because the Petition does not sufficiently plead a case for relief.  Dkt. 13 at 3–4.  On March 22, 2021, Petitioner constructively filed his opposition to Respondent's Motion.  Dkt. 16 at 2.  On June 3, 2021, this Court denied Respondent's Motion with prejudice as to the grounds that the Petition seeks relief from two (2) separate state court judgments; and ordered Respondent to file and serve an Answer to the Petition addressing the merits of the Petition's claims.  Dkts. 19; 21.

On July 6, 2021, Respondent filed an Answer arguing that:  (1) Petitioner's claims are untimely; (2) Petitioner's claims are procedurally defaulted; (3) Petitioner's plea bargain precludes relief; and (4) Petitioner has not sufficiently pled a case for relief.  Dkt. 23 at 19–35.  Petitioner constructively filed a Response to the Answer on September 2, 2021.  Dkt. 27 at 13.

4

On October 6, 2021, the Court ordered supplemental briefing on the issue of timeliness. Dkt. 28. On October 28, 2021, Petitioner filed his Supplemental Brief, and on November 12, 2021 Respondent filed his Reply. Dkts. 29, 30. Finally, on December 2, 2021, Petitioner filed a Response to Respondents Supplemental Reply.[5] Dkt. 31.

On December 9, 2021, the Court issued a Report and Recommendation denying the petition, dismissing the action with prejudice, and granting a certificate of appealability. Dkt. 33. On January 5, 2022, Respondent filed Objections to the Report and Recommendation. Dkt. 34. ~~On January 6,~~ Petitioner filed his own Objections on January 6 and January 12. Dkts. 35~~,~~. ~~36.~~

### III.

### **SUMMARY OF THE PETITION**

In the Petition, Petitioner summarizes the circumstances surrounding his two (2) convictions as follows:

When Petitioner was "in his twenties," he had a romantic relationship with a sixteen-year-old girl ("Jocelyn") who lived next door to him. Dkt. 1 at 20. A conflict began between Petitioner and Jocelyn's father ("Marco") when Petitioner approached him about the possibility of marriage. Id. at 21. Days later, Marco saw Petitioner taking out the trash when he became infuriated and started cursing at Petitioner. Id. Marco began to approach Petitioner, and Petitioner feared Marco was going to attack him. Id. Petitioner was carrying a gun because he had "experienced troubles with someone other than Marco during this same period of time." Id. Petitioner warned Marco that he was carrying a weapon and instructed him to "abandon his attacks." Id. Marco did so and returned home. Id.

---

[5] The Court did not order Petitioner to respond to Respondent's Supplemental Reply, but considers Petitioner's arguments in his Response nonetheless. Dkt. 28.

5

1  Petitioner decided to move to Ontario to live with his sister until Marco's
2  temper cooled down. Id. at 22. Shortly thereafter, Jocelyn followed Petitioner and
3  requested to move in with Petitioner's sister, which instigated another conflict
4  between Petitioner's sister and her husband. Id. At some point during this conflict,
5  the weapon Petitioner had been carrying was accidentally fired when it fell out of
6  Petitioner's waist band. Id. When the police arrived, they located a .380 caliber
7  weapon that had been dismantled and was non-functional, and Petitioner hiding
8  inside the attic. Id. Petitioner was charged with attempted murder and kidnapping,
9  though the kidnapping charges were later dismissed when officers discovered Jocelyn
10 had left home on her own free will. Id. at 23. On April 26, 2013, Petitioner pled
11 guilty to the attempted murder charge in exchange for twelve (12) years in prison
12 ("Ontario case"). Id.

13 While Petitioner was serving this sentence, he was taken to court in Los
14 Angeles where he had been charged with attempted murder and "forcible sex,"
15 apparently related to the previous confrontation with Marco that caused Petitioner to
16 move to Ontario. Id. Petitioner spoke with his attorney, who stated that 9mm
17 casings and a gun were recovered from the site of the incident. Id. Petitioner told his
18 lawyer that the casings and the weapon type did not match and that he should file a
19 suppression motion. Id. Counsel did not file any such motion. Id. Petitioner also
20 told his lawyer to file "Romeo and Juliet" motions, which counsel did not file. Id.
21 Petitioner eventually fired his private attorney for refusing to investigate the photo of
22 the weapon. Dkt. 31 at 5. Eventually, "[a]s a direct result of counsel[']s failures to file
23 proper motions or to provide full disclosure of the discovery, [P]etitioner entered into
24 another plea settlement" on March 17, 2014 ("Pomona case"). Dkt. 1 at 23.

25 Petitioner sets forth the following three (3) grounds for relief, which appear to
26 relate to the Pomona case:
27   (1) Rios' due process rights were violated when the prosecutor coerced the plea
28       agreement while relying on false evidence "of the 9mm casings used in a

6

|   |   |
|---|---|
| 1 | case where a .380 firearm was located, resulting in an illegal plea agreement" |
| 2 | ("Claim One"); |
| 3 | (2) Rios' due process rights were violated when the prosecutor coerced the plea |
| 4 | Settlement "regarding P.C. § 289 where consenting parties participated |
| 5 | under the 'Romeo and Juliet' laws" ("Claim Two"); and |
| 6 | (3) Rios' due process rights outlined by the Fourteenth Amendment were |
| 7 | violated when trial counsel failed to file suppression motions with "regards |
| 8 | to the .380 semi-automatic weapon recovered from" Ontario, California |
| 9 | ("Claim Three"). |

Id. at 27–29.

Petitioner acknowledges his delay in bringing his claims in the Petition. Id. at 17–18. Petitioner explains that the facts underlying his claims were only recently discovered, in January 2020. Id.; Dkt. 29 at 9. Both Petitioner's private lawyer, who he later fired, and his public defender, delayed in providing Petitioner with the discovery files for his case. Id. at 5–6. Petitioner submits letters from his sister, Martha, showing that she did not receive the files until July 2014. Id. at 6, 30. Martha could not understand the files or afford to hire a lawyer to review them. Id. at 7, 30–31. The files sat in Martha's garage until October 2019.[6] Id. at 7–8, 32–34.

In August 2019, Martha noticed a neighbor handling files in boxes similar to those that contained Petitioner's discovery. Id. at 8. The neighbor, Jorge, told Martha that he was a paralegal and could look at Petitioner's files to see if he could help. Id. Jorge agreed to review the discovery for twenty (20) dollars an hour. Id. In January 2020, Petitioner received a letter from Martha instructing him to call her right away. Id. at 9. When Petitioner called, Jorge told Petitioner that the Pomona prosecutors

---

[6] The letters from Petitioner's sister that describe the investigation into the files are dated 2017 and 2018, whereas Petitioner alleges the investigation began in 2019. Dkt. 29 at 7–8, 32–34. The Court assumes Petitioner's dates are correct because even under that assumption, the Petition is untimely.

7

had used evidence from the Ontario case. Id. Petitioner attaches a declaration from Jorge, which states, in relevant parts, as follows:

> [The discovery] contained about 2,300 pages of various police reports, witness statements, communications between lawyers, and photographs. These files seem to be related to two separate cases. [Upon] review of these records located evidence related to another case from San Bernardino California case# FWV1201258. This other case information included, 1) Copies of a charge sheet, 2) Booking information, 3) Chain of evidence for a handgun located at an Ontario, California crime scene. The weapon entered into this FWV1201258 case was a .380 caliber semiautomatic handgun. There were reports indicating this weapon had been processed through SBSD crime labs. [T]his weapon was recovered from Ontario, California.
>
> [Upon] review of the remainder of these files there was no such evidence. relating to any other weapons related to the case, even though there were evidence records suggesting 9mm casings were collected from the Pomona, California case. [Within] the records of this Los Angeles county case where a plea bargain settlement sheets for the San Bernardino case. …[Records] did not include any discovery from Los Angeles to indicate any weapons were recovered from the Pomona crime scene other than a schedule of casings collected from the Rios's property that were 9mm. There was no other type of casings located at the Pomona crime scene.
>
> [According] to the information that [Petitioner] gave me, regarding the photo of a weapon, was located inside these records and is a photo of a .380 caliber semi-automatic handgun. The photo did not have any stamping other than a numeric on the bottom of the page. [Within] these files was a case registry packet which indicated all the hearings held for this case. None of these recordings indicated any motion hearings such as suppressions, motions to dismiss P.C.995.
>
> [There] were several letters from [Petitioner] to his lawyer where [Petitioner] asked for the discovery. It did not indicate any answers were provided. [These] requests for discovery were dated from April 2014 to August 2014.
>
> [Once] I spoke to [Petitioner] about the records I researched, it was determined that the photo I located in these records is the same photo he was shown by his lawyer, [Petitioner] described the photo of the weapon, which was a photo of a .380 caliber handgun. [I] then suggested to

8

> [Petitioner] that his files did not have anything related to any weapons collected from the Pomona crime scene, that his suspicions were accurate and that the prosecutor used a photo from a different case. The chain of evidence from Ontario for this weapon, and SBSD crime laboratory suggest that Los Angeles used the San Bernardino evidence to reach the conviction. THE WRONG WEAPON, .380 vs. 9mm.
>
> [I] am not an expert weapon specialist and told [Petitioner] that he should hire a lawyer as soon as he can. [These] files suggest that Los Angeles committed fraud to enter the contract which got him a 27-year sentence. [The] first time I told Luis about this information was over the phone on or about January 2020. [This] information and findings are what the records indicated which were inside a box marked as LOS ANGELES COUNTY CASE# KA098999-0.

Id. at 18–20.

After this conversation with Jorge, Petitioner began diligently preparing motions to consolidate his cases, which eventually led to the various habeas petitions he filed in state court. Id. at 15.

## IV.

## DISCUSSION

### A. THE PETITION IS UNTIMELY

#### 1. The petition was filed after AEDPA's one-year limitations period

##### a. Applicable law

AEDPA "sets a one-year limitations period in which a state prisoner must file a federal habeas corpus petition." Thompson v. Lea, 681 F.3d 1093, 1093 (9th Cir. 2012). Ordinarily, the limitations period runs from the date on which the prisoner's judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1). In California, a notice of appeal must be filed within sixty (60) days of the judgment or order being appealed. Cal. R. Ct. 8.308(a).

///
///
///

9

### b. Analysis

Here, Petitioner pled guilty and was sentenced on March 17, 2014. Lodg. 5 at 6–10, 14, 19–22. Petitioner did not appeal, and therefore his conviction became final sixty (60) days later on May 16, 2014. See 28 U.S.C. § 2244(d)(1); Cal. R. Ct. 8.308(a). Absent a later trigger date or any tolling, the statute of limitations would have expired May 16, 2015. Accordingly, the instant Petition, filed on December 17, 2020, appears over five (5) years late.

### 2. Petitioner is not entitled to later trigger date

#### a. Applicable law

Pursuant to section 2244(d)(1), there are three (3) situations where a petitioner may be entitled to a later trigger date of the one-year limitation period beyond the date of his conviction becoming final. 28 U.S.C. § 2244(d)(1). First, under Subsection (B), if a state action prevented a petitioner from filing a federal habeas claim in violation of the Constitution or laws of the United States, the limitations period begins to run on "the date on which the impediment to filing an application created by State action . . . is removed[.]" 28 U.S.C. § 2244(d)(1)(B). Second, under Subsection (C), if a right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, the limitations period begins to run on the "date on which the constitutional right asserted was initially recognized by the Supreme Court[.]" 28 U.S.C. § 2244(d)(1)(C). Third, under Subsection (D), if a petitioner brings newly-discovered claims, the limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). However, "AEDPA's one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis." Mardesich v. Cate, 668 F.3d 1164, 1171 (9th Cir. 2012). A different triggering date, therefore, may apply to each claim in a petition. Id.

"The statute of limitations begins to run under § 2244(d)(1)(D) when the factual predicate of a claim 'could have been discovered through the exercise of due

diligence,' not when it actually was discovered." Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012) (emphasis added). "Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (citation omitted). To have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both elements of an ineffective assistance of counsel claim: (1) unreasonable performance and (2) resulting prejudice. Id. at 1154.

### b. Analysis

Here, the only relevant justification for a later trigger date would be § 2244(d)(1)(D), relating to newly discovered claims. Petitioner contends that, in January 2020, a neighbor's review of the discovery files from his case revealed the prosecution had obtained a weapon from Petitioner's previous case in Ontario and used it to coerce his March 17, 2014 plea in Pomona. Dkt. 1 at 17–18; see also Dkt. 29. Petitioner further argues that he has been diligent in pursuing his claims since this discovery. Id. at 19. Petitioner filed the instant petition in December 2020. Thus, assuming Petitioner had discovered the factual predicate for his claims in January 2020, and could not have discovered it before with due diligence, the instant petition could have been timely filed.[7]

However, Petitioner appears to have known the factual predicate for his claims at the time of his plea. All three (3) of Petitioner's claims appear to be based on the prosecutor's alleged misuse of gun evidence from Petitioner's previous case in

---

[7] The Court need not and does not address whether Petitioner could have, with reasonable diligence, discovered the new evidence when his sister received the discovery in 2014 or when Jorge began his investigation in August 2019. Even giving Petitioner the benefit of the latest possible trigger date, the Petition is still untimely because Petitioner was aware of the essential facts for his claims at the time of his plea. Accordingly, the exact would-be trigger date is irrelevant.

11

1  Ontario.[8] Dkt. 1 at 27–29. Petitioner admits that both he and trial counsel knew the prosecution was trying to connect the weapon from his Ontario case to his Pomona case. Dkts. 1 at 23; 29 at 4, 31 at 4–5. Petitioner also admits that, prior to his plea, he told counsel that the same weapon could not have been used in both cases because the shell casings found did not match and urged counsel to file a motion to suppress the gun evidence. Dkt. 1 at 23; 29 at 5; 31 at 4–5. Petitioner even fired his first attorney for failing to investigate the gun evidence. Dkt. 31 at 4–5.

Indeed, despite having multiple opportunities before this Court and others, Petitioner has not been able to produce or describe any new evidence or explain how that evidence provided any facts that he did not already know at the time of his plea. Alongside his Supplemental Brief, Petitioner submitted the declaration of Jorge Enrique Munoz. Dkt. 29 at 18–20. The declaration describes Jorge's review of the discovery files and his findings, but the declaration does not cite any facts or evidence that Petitioner was not aware of at the time of his plea. Id. Rather, the declaration explains that a photo of a .380 caliber gun was included in the Pomona case file despite there being no evidence of any gun collected from the Pomona crime scene, and infers from these facts that "[Petitioner's] suspicions were accurate and that the prosecutor used a photo [of a gun] from a different case." Id. Petitioner argues that, while he speculated the photo of the weapon used in his Pomona Case was the same one from his Ontario Case at the time of his plea, his "suspicion" or "speculation" was not confirmed until he discovered the photo and chain of evidence from his discovery files, and therefore he could not have brought this claim before this discovery. Dkt. 31 at 4–5.

---

[8] Though Petitioner references the gun evidence in his second claim, it is not entirely clear how this evidence is relevant to his "Romeo and Juliet" argument. Dkt. 1 at 28. However, to the extent Petitioner's argument is not based on the gun evidence, the claim is clearly time-barred, since he does not allege any of the other underlying facts are newly discovered. Accordingly, out of an abundance of caution, the Court assumes Petitioner's second claim is somehow contingent on the gun evidence.

However, as noted above, Petitioner admits that, at the time of his plea: (1) he "believed what he [had] seen in the grainy photo copy of some weapon did not match the weapon allegedly used in the Pomona case"; (2) he told his lawyer to file suppression motions regarding the prosecutor's gun evidence; and (3) he fired his first lawyer for failing to investigate the photo. Though the discovery files from Petitioner's case may have supported his original inference, or made clear the "legal significance" of Petitioner's original suspicions, Petitioner's own admissions confirm that the discovery files did not reveal any <u>facts</u> Petitioner was not already aware of before his plea. See <u>Hasan</u>, 254 F.3d at 1154 n.3 ("Time begins when the prisoner knows (or through diligence could discover) the <u>important facts</u>, not when the prisoner recognizes their legal significance." (emphasis added)).

To summarize, Petitioner has discovered any missing information that prevented him from raising this issue before he entered his plea, on direct appeal, or in a timely filed habeas petition; in fact, Petitioner himself admits he identified and raised the issue with counsel at the time of his plea, and fired his attorney for failing to pursue it. Accordingly, regardless of whatever merit Petitioner's claims may have, his argument that he is entitled to a later trigger date under § 2244(d)(1)(D) based on newly discovered claims must fail.

**3. Statutory tolling does not render the Petition timely**

**a. Applicable law**

"A habeas petitioner is entitled to statutory tolling of AEDPA's one-year statute of limitations while a 'properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'" <u>Nedds v. Calderon</u>, 678 F.3d 777, 780 (9th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2) ("Section 2244(d)(2)")). However, state habeas petitions that are denied as untimely are not "properly filed" and therefore do not toll the statute of limitations. <u>Pace v. DiGuglielmo</u>, 544 U.S. 408 (2005). Furthermore, habeas petitions pending in federal court, as opposed to state court, do not toll the statute of limitations. <u>Duncan v.</u>

13

1 Walker, 533 U.S. 167, 181-82 (2001). Finally, "section 2244(d) does not permit the
2 reinitiation of the limitations period that has ended before the state petition was
3 filed." Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) (citation omitted).

          **b.    Analysis**

5 Here, Petitioner did not appeal his conviction or file any state habeas petitions
6 until March 17, 2020. Dkt 1 at 4; Lodg. 2 at 5. However, the statute of limitations
7 period expired on May 16, 2015. Accordingly, no subsequent petitions could reinitiate
8 the limitations period and render the Petition timely. See Ferguson, 321 F.3d at 823.

      **4.    Equitable tolling does not render the Petition timely**

          **a.    Applicable law**

11 In addition to the statutory tolling provided for by section 2244(d)(2), the
12 "AEDPA limitations period may be tolled" when it is "equitably required." Doe v.
13 Busby, 661 F.3d 1001, 1011 (9th Cir. 2011). The "threshold necessary to trigger
14 equitable tolling [under AEDPA] is very high." Bills v. Clark, 628 F.3d 1092, 1097
15 (9th Cir. 2010) (alteration in original). A court may grant equitable tolling only where
16 " 'extraordinary circumstances' prevented an otherwise diligent petitioner from filing
17 on time." Forbess v. Franke, 749 F.3d 837, 839 (9th Cir. 2014). The petitioner "bears
18 a heavy burden to show that [he] is entitled to equitable tolling, 'lest the exceptions
19 swallow the rule.' " Rudin v. Myles, 781 F.3d 1043, 1055 (9th Cir. 2015).

          **b.    Analysis**

21 Petitioner cites the delay in receiving his discovery, his lack of legal expertise,
22 and restrictions on access to law library resources due to COVID-19 as potential
23 justifications for equitable tolling. Dkt. 1 at 16–17.
24 As an initial matter, courts have held lack of legal expertise is not sufficient to
25 warrant equitable tolling. See Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006).
26 Furthermore, even if any of Petitioner's other two (2) reasons could justify some
27 degree of equitable tolling, the instant Petition would still be untimely.

Petitioner's Supplemental Brief shows that, even after the delay, Petitioner's sister had received Petitioner's discovery by July 2014. Dkt. 29 at 28–29. Accordingly, even if Petitioner was entitled to equitable tolling for the months when he did not have access to his case files, the statute of limitations would have still expired in 2015. Furthermore, any restrictions in law library access due to COVID-19 could not have begun before 2020. By that time, the Petition would have already been untimely by over five (5) years.

Accordingly, equitable tolling does not render the Petition timely.

## V.
## **CERTIFICATE OF APPEALABILITY**

**A. APPLICABLE LAW**

Under 28 U.S.C. § 2253(c)(2), a Certificate of Appealability may issue "if the applicant has made a substantial showing of the denial of a constitutional right." The Supreme Court has held that, when the court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, this standard means that the petitioner must show both that: (1) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling" and (2) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). In this case, petitioners have not had an opportunity to develop their claims or argue their merits in the court, and therefore, with respect to the second part of the test, the Ninth Circuit "simply take[s] a 'quick look' at the face of the complaint to determine whether the petition has 'facially allege[d] the denial of a constitutional right.' " Valerio v. Crawford, 306 F.3d 742, 767 (9th Cir. 2002) (quoting Petrocelli v. Angelone, 248 F.3d 877, 885 (9th Cir. 2001)).

///
///
///

**B.   ANALYSIS**

**1.   Procedural ruling**

The undersigned finds that reasonable jurists could debate whether the Court's procedural ruling that the Petition is untimely is correct—specifically, whether any of the discoveries made by Petitioner in reviewing his file could be considered as part of the factual predicate for his claims, and thus entitle him to a later trigger date under § 2244(d)(1)(D).

**2.   Valid claim of the denial of a constitutional right**

Respondent argues that Petitioner has failed to plead a constitutional case for relief on the merits as to any of his claims, and therefore the Court may not issue a certificate of appealability, even if the statute of limitations question is debatable. Dkt. 34 at 1–3.  However, the Court finds reasonable jurists could debate whether the Petition states a valid claim of the denial of a constitutional right.  For example, liberally construed, the Petition argues that trial counsel was ineffective for advising him to enter into the plea in the Pomona case without considering or investigating Petitioner's claim that the prosecutor's gun evidence was taken from the Ontario case (Claim Three).  Dkt. 1 at 23 ("As a direct result of counsels failures to file proper motions or to provide full disclosure of the discovery, petitioner entered into another plea settlement, trying to avoid the results of counselors incompetence").  To the extent Petitioner attacks counsel's advice, Petitioner presents an ineffective assistance of counsel ("IAC") claim that is colorable on federal habeas review.  Hill v. Lockhart, 474 U.S. 52, 56–57 (1985) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)) ("a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [the range of competence demanded of attorneys in criminal cases]' "); see also Fairbank v. Ayers, 650 F.3d 1243, 1245–55 (9th Cir. 2011) (limiting IAC habeas claim challenging guilty plea "to the contention that trial counsel was ineffective only in advising petitioner to plead guilty").

16

If Petitioner's discoveries were considered part of the factual predicate for newly discovered claims, and the Petition was rendered timely as a result, the Court could reach the merits of Petitioner's ineffective assistance of counsel claim. Thus, it is recommended that a Certificate of Appealability be **GRANTED** as to whether Petitioner could be entitled to a later trigger date under § 2244(d)(1)(D).

## VI.
## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Court issue an Order:

(1) accepting this Report and Recommendation;

(2) directing that Judgment be entered **DENYING** the Petition and **DISMISSING** this action with prejudice; and

(3) **GRANTING** a Certificate of Appealability.

Dated: January 20, 2022

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

17